IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

DOROTHY M.,

                                    Plaintiff,

                v.                                              Civil Action No.
                                                                6:22-CV-0245 (DEP)

COMMISSIONER OF SOCIAL
SECURITY,

                                    Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF

LAW OFFICE OF                             PETER ANTONOWICZ, ESQ.
PETER W. ANTONOWICZ
148 West Dominick Street
Rome, NY 13440

FOR DEFENDANT

SOCIAL SECURITY ADMIN.                    SHANNON FISHEL, ESQ.
6401 Security Boulevard
Baltimore, MD 21235


DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

ORDER

        Currently pending before the court in this action, in which plaintiff

seeks judicial review of an adverse administrative determination by the

Commissioner of Social Security ("Commissioner"), pursuant to 42

U.S.C. § 405(g) are cross-motions for judgment on the pleadings.[1]

Oral argument was conducted in connection with those motions on

June 7, 2023, during a telephone conference held on the record. At the

close of argument, I issued a bench decision in which, after applying

the requisite deferential review standard, I found that the

Commissioner's determination did not result from the application of

proper legal principles and is not supported by substantial evidence,

providing further detail regarding my reasoning and addressing the

specific issues raised by the plaintiff in this appeal.

     After due deliberation, and based upon the court's oral bench

decision, a transcript of which is attached and incorporated herein by

reference, it is hereby

     ORDERED, as follows:

     1)    Plaintiff's motion for judgment on the pleadings is

---

[1]    This matter, which is before me on consent of the parties pursuant to 28 U.S.C. § 636(c), has been treated in accordance with the procedures set forth in General Order No. 18. Under that General Order once issue has been joined, an action such as this is considered procedurally, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

GRANTED.

2)     The Commissioner's determination that plaintiff was not disabled at the relevant times, and thus is not entitled to benefits under the Social Security Act, is VACATED.

3)     The matter is hereby REMANDED to the Commissioner, without a directed finding of disability, for further proceedings consistent with this determination.

4)     The clerk is respectfully directed to enter judgment, based upon this determination, remanding the matter to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) and closing this case.

David E. Peebles
U.S. Magistrate Judge

Dated:     June 13, 2023
           Syracuse, NY

```
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-----------------------------------------------x
DOROTHY M.,

                    Plaintiff,

vs.                                   22-CV-245

COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.
-----------------------------------------------x
```

**DECISION - June 7, 2023**

**the HONORABLE DAVID E. PEEBLES**

**United States Magistrate-Judge, Presiding**


APPEARANCES (by telephone)


For Plaintiff:      PETER W. ANTONOWICZ, ESQ.
                    148 West Dominick Street
                    Rome, NY 13440

For Defendant:      SOCIAL SECURITY ADMINISTRATION
                    6401 Security Blvd.
                    Baltimore, MD 21235
                    BY:  SHANNON FISHEL, ESQ.


*Eileen McDonough, RPR, CRR*
*Official United States Court Reporter*
*P.O. Box 7367*
*Syracuse, New York 13261*
*(315)234-8546*

*Decision - 22-cv-245 - 6/7/2023*                                    2

1      THE COURT:  Let me begin my decision by thanking

2   you both for excellent written and oral presentations.

3      I have before me an action in which the plaintiff

4   has challenged an adverse determination by the Acting

5   Commissioner of Social Security finding that she was not

6   disabled at the relevant times and therefore ineligible for

7   the disability insurance benefits that she sought.

8      The action is brought pursuant to 42, United States

9   Code, Section 405(g).  The background is as follows.

10  Plaintiff was born in November of 1966.  She is currently 56

11  years of age.  She was 51 years old at the alleged onset of

12  her disability on March 1, 2018.  Plaintiff lives in a house

13  in Rome, New York, with her husband.  She stands 5-foot

14  2-inches in height, and at relevant times weighed

15  approximately 226 pounds.  Plaintiff has a twelfth grade

16  education and while in school attended regular classes.

17      Plaintiff stopped working on March 1, 2018,

18  according to her function report.  While employed she worked

19  in accounts receivable, as an Arc counselor, as an overseas

20  travel coordinator position she held approximately ten years,

21  and she worked scheduling and setting up video conferences.

22  She also worked in 2018 and 2019 as a stay-at-home daycare

23  provider, although it did not -- the income generated from

24  that position did not rise to a substantial gainful activity

25  level, or SGA.  Significantly, plaintiff collected

*Decision – 22-cv-245 – 6/7/2023*                      3

1  unemployment insurance benefits for three-quarters of 2020.

2          Plaintiff suffers physically from fibromyalgia;

3  left hip trochanteric bursitis/osteoarthritis; multilevel

4  degenerative disc disease; irritable bowel syndrome-C;

5  esophageal varices; gastroesophageal reflux disease, or GERD;

6  hyperlipidemia; obesity; depression; Type 2 diabetes;

7  nonalcoholic steatohepatitis, or NASH; nausea; and leg edema.

8          Plaintiff treats primarily with Dr. Daniel Goodman,

9  who has been her primary care provider since March of 2018.

10  She also sees physician's assistant, or PA, Marcy Gambino, as

11  well as other specialists, including a gastroenterologist, an

12  endocrinologist, a rheumatologist, and an orthopedic surgeon.

13          Plaintiff's activities of daily living include some

14  cooking, some cleaning.  She can shower.  She can dress,

15  although sometimes needs help in that area, watches

16  television, listens to the radio.  She can read.  She

17  socializes with friends.  She can shop.  She walks dogs, and

18  occasionally cares for her grandchildren.

19          Procedurally, plaintiff applied for Title II

20  benefits under the Social Security Act on January 10, 2020,

21  alleging an onset date of March 1, 2018.

22          At page 205 in her function report she claimed

23  disability based on fibromyalgia, fatigue, plantar fasciitis,

24  IBS-C, bilateral hip bursitis, carpal tunnel syndrome,

25  headaches, complications from breast reconstruction surgery,

1   and cirrhosis of the liver, or fatty liver.

2            A hearing was conducted on March 16, 2021, by

3   Administrative Law Judge Bruce Fein to address plaintiff's

4   application for benefits.  ALJ Fein issued an adverse

5   decision on April 5, 2021.  That became a final determination

6   of the Agency on February 1, 2022, when the Social Security

7   Appeals Council denied plaintiff's application for review.

8   This action was commenced on March 14, 2022, and is timely.

9            In his decision, ALJ Fein applied the familiar

10  five-step test for determining disability, first noting that

11  plaintiff was or will be insured under Title II through

12  December 31 of this year.

13           He then concluded at step one that plaintiff did

14  not engage in SGA after her onset date, again noting the

15  income from 2018 and 2019, but finding that that did not meet

16  SGA levels.

17           At step two ALJ Fein concluded that plaintiff

18  suffers from severe impairments that impose more than minimal

19  limitations on her ability to perform basic work functions,

20  including left hip trochanteric bursitis/osteoarthritis,

21  fibromyalgia, and multilevel degenerative disc disease.  He

22  rejected plaintiff's IBS-C, diabetes, obesity, depression,

23  GERD, and others, including mental conditions, as not

24  sufficiently severe.  Also specifically rejected a conclusion

25  by Dr. Goodman, plaintiff's primary physician, that

*Decision – 22-cv-245 – 6/7/2023*                                5

1   plaintiff's condition meets or medically equals listing 5.05

2   and is therefore a presumptively disabling condition, noting,

3   among other things, that Dr. Goodman did not treat plaintiff

4   for her liver disease.

5          At step three the administrative law judge

6   concluded that plaintiff's conditions do not, in fact, meet

7   or medically equal any of the listed presumptively disabling

8   conditions, specifically referencing 1.02, 1.04, 14.09, and

9   SSR 12-2p relating to fibromyalgia.  After surveying the

10  available evidence, ALJ Fein concluded that plaintiff is

11  capable of performing less than the full range of sedentary

12  work, specifying that she cannot climb ladders, ropes and

13  scaffolds.  She can occasionally climb ramps and stairs,

14  balance, stoop, kneel, crouch and crawl.  She can frequently

15  handle and finger with bilateral hands.  The claimant should

16  avoid concentrated exposure to extreme temperatures and

17  pulmonary irritants.

18         Applying that RFC finding, ALJ Fein concluded at

19  step four that plaintiff is capable of performing her past

20  relevant work as a travel agent, a telecommunication

21  specialist and accounting clerk, as both actually and as

22  generally performed in the national economy.

23         He also made an alternative finding at step five

24  that plaintiff is also capable of performing as a charge

25  account clerk and a surveillance system monitor, but noted

1  that there are only 962 available jobs as charge account

2  clerk, and 2,900 as surveillance system monitor, something

3  which I think everyone concedes would not suffice to support

4  a step five finding, it's not a sufficient number of

5  available jobs.

6          As you know, the Court's function in this case is

7  limited.  The standard that I apply is extremely deferential.

8  I must determine whether correct legal principles were

9  applied and the result is supported by substantial evidence,

10 which is defined as such relevant evidence as a reasonable

11 mind would accept as adequate to support a conclusion.  It is

12 a high bar for a claimant, as noted by the Second Circuit in

13 *Brault versus Social Security Administration Commissioner*,

14 683 F.3d 443, Second Circuit, 2012, a standard which has been

15 reiterated many times, including most recently in *Schillo v.*

16 *Kijakazi*, 31 F.4th 64, from April 6th, 2022.

17         In this case plaintiff has raised multiple

18 contentions.  She claims that the residual functional

19 capacity finding is not supported, noting that there is no

20 medical source opinion provided by consultative examiner

21 Dr. Jenouri.  She claims that it was improper for the

22 administrative law judge to rely on her receipt of

23 unemployment benefits as a basis to draw adverse inferences.

24 She argues there is no logical bridge given by the

25 administrative law judge between her activities of daily

1  living and the ability to perform work on an eight-hour day,

2  five-day-a-week basis.  She argues that errors are harmful

3  because if plaintiff is unable to concentrate up to one-third

4  of the day, she would be limited to unskilled work and two

5  jobs in insufficient numbers at step five.

6          She also concludes that there is an error at step

7  two in not finding that her NASH constituted a severe

8  impairment, arguing that it resulted in fatigue which was not

9  properly considered by the administrative law judge.

10          Addressing first the step two argument, the

11  governing regulations provide that an impairment or

12  combination of impairments is not severe if it does not

13  significantly limit a claimant's physical or mental ability

14  to do basic work activity.  That section goes on to describe

15  what is meant by the phrase basic work activities, defining

16  that term to include the abilities and aptitudes necessary to

17  do more jobs.

18          It is true that the second step requirement is

19  de minimis and intended to screen out only the truly weakest

20  of cases.  However, the mere presence of a disease or

21  impairment or that establishing that a person has been

22  diagnosed or treated for a disease or impairment is not by

23  itself sufficient to establish a condition as severe.  And,

24  of course, the burden is on the plaintiff to not only

25  establish her condition but also limitations related or

1    stemming from it.

2              Plaintiff testified to experiencing fatigue due to

3    her fibromyalgia.  That's at page 40 of the Administrative

4    Transcript.  The administrative law judge specifically

5    referenced fatigue when outlining plaintiff's claims at the

6    bottom of page 16 and the top of page 17 of the

7    Administrative Transcript.  He found fibromyalgia, of course,

8    to be a severe impairment and proceeded to the remaining

9    steps of the sequential evaluation.  So I find that any error

10   in that regard is harmless, and that fatigue was, in fact,

11   taken into consideration by the administrative law judge who

12   relied on the state administrative findings for his

13   determination.

14             Next, the argument surrounds the residual

15   functional capacity, and specifically the consideration of

16   plaintiff's subjective symptoms.  Under the step two review

17   protocol applicable to Social Security cases for assessing

18   the claimant's subjective reports, an ALJ must first

19   determine whether an individual has a medically determinable

20   impairment that could reasonably be expected to produce the

21   alleged symptoms.  If that finding is made, the ALJ must then

22   evaluate the intensity and persistence of those symptoms and

23   determine the extent to which they limit the claimant's

24   ability to perform work-related activities.

25             Social Security Ruling 16-3p sets out this in some

*Decision - 22-cv-245 - 6/7/2023*                    9

1   more detail and articulates factors to be considered,

2   including daily activities, or location, duration, frequency

3   and intensity of pain or other symptoms, factors that

4   precipitate or aggravate the claimant's symptoms, the type,

5   dosage, effectiveness and side effects of medication, any

6   treatment other than medication that is used to relieve the

7   symptoms, other measures to obtain relief of symptoms and any

8   other relevant factors.

9           In this case the administrative law judge relied on

10  plaintiff's activities of daily living, which is a proper

11  consideration.  The fact that she was able to perform some

12  work in 2018 and 2019, he explained his reasoning at page 16

13  through 20.  He relied on the receipt of unemployment

14  benefits, and although he did not specifically rely solely on

15  that, it is a proper consideration.  In *Wright versus*

16  *Berryhill*, 687 F.App'x 45, from the Second Circuit, April 14,

17  2017, it was noted that a plaintiff's representation of

18  readiness and ability to work in connection with his receipt

19  of unemployment benefits is a proper factor.

20          The bottom line is a determination of what we used

21  to call credibility; the analysis of subjective symptoms

22  claimed by a plaintiff is entitled to considerable deference

23  if it is supported by substantial evidence, which I find to

24  be the case here.

25          There is also a claim that medical opinions were

1  not properly considered.  Because plaintiff's application was

2  filed after March 27, 2017, this case is subject to the

3  amended regulations regarding opinion evidence.  Under those

4  regulations, the Commissioner does not defer or give any

5  specific evidentiary weight, including controlling weight, to

6  any medical opinions, including those from medical sources.

7  But rather -- the plaintiff's medical sources, I should say.

8  But rather, will consider whether those opinions are

9  persuasive, primarily considering whether they're supported

10  by and consistent with the record in the case.

11         In this case Dr. Goodman, plaintiff's treating

12  physician, provided a medical source statement dated

13  October 22, 2020.  It appears at pages 2034 through 2038 of

14  the Administrative Transcript.  It is considerably more

15  limiting than the residual functional capacity.  It finds

16  that plaintiff can only sit for thirty minutes at a time and

17  stand for twenty minutes at a time, can walk or stand less

18  than two hours, and sit less than -- about four hours in an

19  eight-hour workday.  It would require more than ten

20  unscheduled breaks during an eight-hour workday.  And it

21  opines that plaintiff would be likely absent more than four

22  days a month.

23         The administrative law judge considered that

24  opinion and discussed it at page 21 of the Administrative

25  Transcript and found it to be less persuasive.  The reasons

*Decision - 22-cv-245 - 6/7/2023*

1   given are; one, the extreme limitations are inconsistent with

2   the relatively benign findings in Dr. Goodman's and other

3   treatment provider notes, which were summarized earlier in

4   the decision; and two, it was noted that this provider does

5   not treat the plaintiff for the impairments identified as the

6   cause of the restrictions, noting instead that the plaintiff

7   was treated by a gastroenterologist, a rheumatologist and an

8   endocrinologist.

9           I find that if the decision is read as a whole,

10  there is no violation of the regulations.  The other opinions

11  relied on and referenced in the decision include from Drs. C.

12  Krist from July 14, 2020, a non-examining state agency

13  consultant, and Dr. J. Koenig, from October 2, 2020, also a

14  non-examining state agency consultant.  They are similar, and

15  it was noted that they are persuasive, although the

16  administrative law judge found the plaintiff more limited

17  than opined by those two doctors.

18          And then there is a medical source of what would be

19  normally an opinion from Dr. Gilbert Jenouri, dated July 7,

20  2020, who examined the plaintiff.  It appears at 1931 to 1934

21  of the Administrative Transcript.  In his opinion Dr. Jenouri

22  made several observations that were what I would consider to

23  be positive findings; plaintiff's gait was unsteady, can walk

24  on heels and toes with difficulty, can squat only 70 percent.

25  In terms of musculoskeletal there are also limitations in

1   range of motion noted, and there are trigger points for

2   fibromyalgia, including bilateral shoulders and bilateral

3   lumbar area.  There is no medical source statement,

4   unusually.  On page 1934 it abruptly ends with a diagnosis

5   and a statement, "dictation ended here."

6          The court in *Townsend versus Commissioner of Social*

7   *Security*, 2018 WL 6697001, from the Western District of

8   New York, noted the following:  A complete consultative

9   examination report includes the claimant's primary

10  complaints, a description of the history of those complaints,

11  examination findings, laboratory or other test results, a

12  diagnosis and prognosis, and a statement about what the

13  claimant can do despite her impairments.

14         I recognize, as the Commissioner has argued, that

15  the controlling regulation 20 CFR Section 404.1519n

16  specifically notes that, "The medical report must be complete

17  enough to help us determine the nature, severity, and

18  duration of the impairment, and residual functional capacity.

19  The medical source's report of the consultative examination

20  should include the objective medical facts as well as

21  observations and opinions."  It goes on to say, however, as

22  the Commissioner has argued, "Although we will ordinarily

23  request a medical opinion as part of the consultative

24  examination process, the absence of a medical opinion in a

25  consultative examination report will not make the report

*Decision - 22-cv-245 - 6/7/2023*                    13

1    incomplete."  In this case I think it was error not to

2    recontact Dr. Jenouri.  I think this was a complete oversight

3    on his part, and I think it was harmful error.

4         Dr. Goodman found limitations on, among other

5    things, plaintiff's ability to sit for six hours as required

6    and sedentary work.  Dr. Goodman opined four.  He also

7    imposed greater limitations on the ability to lift and carry.

8    And I think this is significant because the ALJ rejected, or

9    I should say found Dr. Krist's and Dr. Koenig's opinions to

10   be persuasive but found that the plaintiff is more limited.

11   The question is how much more and on what basis did the ALJ

12   make that determination?  Did he interpret the raw data from

13   Dr. Jenouri's opinion or from the medical record?  In my view

14   Dr. Jenouri should have been contacted and asked for a

15   medical source statement that would have provided a basis for

16   the residual functional capacity determination.

17        So I think this is harmful error.  There is no

18   medical opinion on point supporting the residual functional

19   capacity.  I think remand is required.  I don't find any

20   persuasive proof of disability, but I will grant judgment on

21   the pleadings to the plaintiff, vacate the Commissioner's

22   determination, and remand the matter for further

23   consideration consistent with this opinion.

24        Thank you both for excellent presentations.  I hope

25   you have a good afternoon.

1                    *            *            *

2

3                  C E R T I F I C A T I O N

4

5           I, EILEEN MCDONOUGH, RPR, CRR, Federal Official

6    Realtime Court Reporter, in and for the United States

7    District Court for the Northern District of New York,

8    do hereby certify that pursuant to Section 753, Title 28,

9    United States Code, that the foregoing is a true and correct

10   transcript of the stenographically reported proceedings held

11   in the above-entitled matter and that the transcript page

12   format is in conformance with the regulations of the

13   Judicial Conference of the United States.

14

15

16

17   _____
                                          *Eileen McDonough*

18                          EILEEN MCDONOUGH, RPR, CRR
                            Federal Official Court Reporter
19

20

21

22

23

24

25